UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| JOHN HEALD, )<br>　　　　　Petitioner )<br>　　　　　　　　　　　　　　　 )<br>v. 　　　　　　　　　　　　　　 )　Civil No. 06-11-B-W<br>　　　　　　　　　　　　　　　 )<br>WARDEN, MAINE STATE PRISON, )<br>　　　　　　　　　　　　　　　 )<br>　　　　　Respondent )　 | |

**RECOMMENDED DECISION ON 28 U.S.C. § 2254 PETITION**

　　　　John Heald pled guilty in April 2003 to ten sexual offenses against minors and one count of procuring alcohol for a minor. He also had his probation revoked on an earlier conviction for a sexual assault against a minor. Heald has filed a 28 U.S.C. § 2254 petition challenging his 2003 conviction raising four grounds. The State of Maine has filed a motion to dismiss (Docket No. 5). I now recommend that the Court grant the motion to dismiss and deny Heald § 2254 relief.

*Background*

*Federal grounds*

　　　　The grounds that Heald raises in this court are as follows. First, Heald believes he received constitutionally inadequate assistance of counsel when counsel at sentencing failed to subpoena "material witnesses" that would, Heald believes, have caused the court to impose a lesser sentence and failed to press the State to abide by a plea agreement that limited his sentence to no more than ten years. Second, Heald does not think that he received a "fair/just" post-conviction hearing by an impartial judge because the judge

who heard the evidence at the post-conviction proceeding was the same judge that sentenced Heald. Third, Heald protests that the post-conviction judge improperly "expunged" one of Heald's four grounds which asserted that his natural rights were violated by being charged with the gross sexual assault offense. And, fourth, Heald maintains that he "received an exceedingly high incarceration sentence" in view of the facts of the underlying offense.

## *28 U.S.C. § 2254 exhaustion requirement*

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that [] the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). However: "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." Id. § 2254(b)(2). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (citing Duncan v. Henry, 513 U.S. 364, 365 (1995) and O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999)). Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts," the Supreme Court explained in O'Sullivan v. Boerckel, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." 526 U.S. 838, 845 (1999). In the State of Maine this means that the

petitioner must present his challenges to the post-conviction determination to the Maine Law Court inviting the Law Court's discretionary review.

*Heald's state court pleadings and the state court decisions*

With respect to Heald's pursuit of remedy from the State, Heald did not file a direct appeal after his conviction and sentencing but he did file an application to the Maine Law Court to appeal his sentence. That application stated:

> The sentence I received was excessive given the fact of this case and the fact that my probation exceeded the time received from the actual crime alleged to have been committed.
> I pleaded guilty without fully understanding the sentence I would be receiving. It came as a shock to me when I received this sentence.
> This sentence is excessive given the time normally given to [a] person for committing this same crime under the same circumstance in this case.
> Review of this case is nec[]essary for justice to be served.

(State Court Record at B.) This application was summarily denied. (Id.)

Heald next filed a petition for post-conviction review. In his pro se pleading he raised four ineffective-assistance-of-counsel grounds. First, he complained that his attorney rendered ineffective assistance of counsel at sentencing when he did not introduce "evidence of reputation and law" which he had in hand to argue for a ten-year sentence. (Id. at C.) Second, Heald argued that counsel "failed by not doing anything to perfect or argue the petitioner's appeal of sentence" on the grounds that it was excessive. In this ground Heald also contended that counsel did not inform Heald when the Law Court denied him leave to appeal his sentence and, as a consequence, Heald was unable to file a timely motion for reconsideration. (Id.)[1] Third, Heald argued that his attorney erred in the plea negotiations with the State in not arguing for a lesser sentence based on "evidence in hand." (Id.) And, fourth, his attorney erred in not arguing that the charge of

---

[1] The post-conviction court broke Heald's second ground into two parts.

3

gross sexual assault was "null and void" under the constitution of the State of Maine, "the declaration of rights being in conflict with the petitioner's God given civil and religious rights." (Id.) In its post-conviction assignment order, the post-conviction court allowed that the first four grounds were proper fodder for post-conviction review, but that the fifth ground was not cognizable in such a proceeding.[2]

In his supplemental post-conviction brief Heald reasserted his four grounds. As to his first ground, Heald listed five individuals that he would have had counsel call as reputation witnesses at sentencing, noting that one of the witnesses had died since the sentencing which made the prejudice to Heald caused by sentencing counsel's lassitude irreversible. He also asserted that he told his attorney that the act underlying the gross sexual assault was consensual and that he did not think the victim was a virgin as she testified at sentencing. He stated that he had a letter from another inmate at the county jail who was acquainted with the victim and this inmate described her as sexy and flirtatious and knew that she had slept with other guys. Heald also believes that a registered nurse he knew could have testified to the fact that if the victim had been a virgin the vaginal swabbing would likely have had blood and the forensics found no indication of blood. And finally – as to counsel's efforts to advocate for a lighter sentence – Heald represented that his attorney informed him that the State was offering a fifteen year cap but indicated that Heald would not get more then ten years incarceration if he plead guilty. Heald stated that his attorney should have argued at sentencing for a lesser sentence as a matter of right under the contractual plea agreement. Heald further laments that, although counsel was aware that Heald was raising children and was

---

[2] This conclusion is a bit mystifying given that it was also framed by Heald as an ineffective assistance of counsel claim.

4

anxious to serve his sentence to attend to his fatherly responsibilities, his attorney did not succeed in securing a lighter sentence.[3]

As to his second ground, Heald's supplemental brief explains that Heald himself filed a timely application to appeal his sentence on October 20, 2003, but complains that his attorney did nothing to support or perfect that application.

With respect to his third ground the supplemental brief represents that Heald asked his attorney to negotiate a plea; his attorney advised him that the State was asking for a fifteen-year cap on incarceration and six-years of probation; that this meant that the court could sentence Heald to a longer term and the defense could ask for less; counsel did not explain the open-ended agreement to Heald; and counsel advised Heald prior to sentencing that he would not be sentence to more than ten years imprisonment. Heald also contended that – given that he had a viable defense of consent -- his attorney misadvised him when he advised Heald to enter a guilty plea instead of going to trial.

And, as to Heald's fourth post-conviction petition ground, his supplemental brief argued that his "religious practice and right to practice the act of consummation in marriage is a sacred God given right that the government cannot lawfully condemn[,] restrict[,] or punish the Petitioner for without legitimate end." (Suppl. Post-conviction Br. at 13.) He expounded:

> The Bible declares: "And God blessed them and God said unto them be fruitful and multiply and replenish the earth and subdue it." (Gen. 1:28.)
> Even today man goes forth under this divine benediction. The Biblical view of human sexual activity is a positive view within a heterosexual relationship in which reproduction is the aim. (It is a fact in this case that although the Petitioner's sperm was found in the victim's vagina she did not become pregnant <u>due to that she was taking the pill, so</u>

---

[3] Heald also stated in his supplemental brief that he asked his attorney to make arrangements for Heald to see his children while incarcerated and counsel never followed through on this score.

> she could have sex and not become pregnant.) However, the positive view of human sexual activity is not just limited to reproduction. The joys of sensual pleasure of romantic love apart f[ro]m childbearing is celebrated in the Song of Solomon 2:13, 16:4-5, 12:16, 6:2-3, 11, 3:12. According to God's will when he opens a female fountain of blood (life) he has endowed upon her a natural, essential, unalienable right to reproduce and to consent to the same. All sexual activity is regulated by God's will as law.
> 
> Human government was established by God after the flood. Every authority established among men depends upon God for its existence. (Romans 13:1) Therefore, every duly constituted authority is subordinated to God's will at law. (Luke 20:25) This God given and God limited authority has never been rescinded, and is thus, applicable even today ... as the free exercise of religion. Some state governments recognize this right and union that accredits marriage also of common law in common law marriage statutes.
> 
> The Maine Legislature (the General Court) lacks the constitutional extent of power [] to make[,] ordain[,] or establish any laws, statutes and ordinances, direction and instructions either with penalties or without that abrogate[]s or impinges upon the natural rights endowed upon us by God.

(Id. at 14.) Thus, his argument was, because the Maine Constitution states that all individuals have inherent and inalienable rights to worship God according to the dictates of their consciousness, the State cannot punish Heald under the gross sexual assault statute.

The post-conviction court held a hearing and ruled orally at the close of a lengthy proceeding, denying Heald relief on each of his claims. At one juncture in this hearing, directly before Heald left the stand, the Court discussed the supplemental brief with Heald's counsel and Heald in an attempt to clarify which grounds Heald was still pressing. (Post-Conviction Hearing Tr. at 85-89.) Counsel indicated that he would prefer to stick to what he believed were "the real substantive issued and have those real substantive issues diluted by distractions or what would otherwise be considered red herrings." (Id. at 89.) The Court and Heald's counsel agreed that Heald's argument

6

concerning natural rights was, in the judge's words, "a path that isn't worth treading."  (Id. at 88-89.)  Counsel also made it clear that Heald was not challenging the voluntariness of his plea.  (Id. at 85-86.)  Although still on the stand, and prodded for input, Heald offered no objection to the understanding arrived at by counsel and court.

At the close of the hearing the Court explained the reason for denying Heald relief apropos his ineffective assistance claims as follows:

> The claims the petitioner, Mr. Heald, has filed are four as articulated ...[in the] post-conviction assignment [order], the first having to do with the effectiveness of – two of these having to do with the effectiveness of [sentencing counsel's] representing Mr. Heald at sentencing.  In that regard the Court would make the following findings, none of which are subject to dispute, that is that the defendant committed a variety of sex offenses against three young girls ages 13 to 15, including a Gross Sexual Assault which was accompanied, according to the victim's statement, by some physical force in a situation which he had provided them with alcohol, had them in a place they couldn't leave.  He did this while he was on probation for another Gross Sexual Assault involving a young girl and had already once violated that probation.
>
> He had not succeeded at sex offender counseling, a fact that the probation officer learned, among other facts, were something [sentencing counsel] knew nothing about.  He had a criminal record of other non sex offenses before this.  He had lived a somewhat irresponsible life-style, having five children with two women, no marriages.  So, what was [sentencing counsel] to do?  As [post-conviction counsel] has said, the mission here was to mitigate the sentence, but [sentencing counsel] did not have a whole lot to work with.  He got a PSI, which the Court would have ordered anyway, he asked for a forensic hoping it would turn up something.  It is true that a Court on its own probably would not have ordered a forensic, but I think it extremely likely that any judge would have ordered a PSI.  The forensic was ordered, the Court finds, hoping it would turn up something positive to explain Mr. Heald's behavior.
>
> It did provide some mitigating information and some aggravating information.  The mitigating information was that Mr. Heald was brought up in an alcoholic home, a variety of other family and other circumstance of his life that might explain his behavior. It also pointed out he was at risk to reoffend which, by the way, I am not sure it would take a psychologist to tell if someone is on probation for Gross Sexual Assault, commit three more sex offenses while on probation, I don't know that it is necessary to have Dr. Rines explain that the defendant is at risk to reoffend.

7

It is true that it had been preferable for [sentencing counsel] to have witnesses to speak in the petitioner's behalf. Perhaps his brother would have been an effective witness. We don't know because we have no offer of proof here as to what the other Mr. Heald would say, but I think it is also fair to say Miss Getchell would have been a very inappropriate witness for Mr. Heald to mitigate sentence because she is a woman who forgave and harbored a man who sexually abused her daughter and I think most judges would have found she is in no position to offer a positive character reference.

The sentencing memo I read during this recess and think what [sentencing counsel] was attempting to do was to aim for the ten year sentence. That's what I read through his citations to Justice Dana's and Saufley's analysis of sentences to show that that is the range the Court should use.

So, the Court finds that [sentencing counsel] was not ineffective, and even if he was, the Court finds the petitioner was not prejudiced. A sentence, under these circumstances, would very unlikely be less than was given Mr. Heald's history, given the facts of this case, which is quite egregious.

Thus, as to grounds 1 and 4, as articulated in Justice Hunter's post-conviction assignment order, judgment is to be entered for the Respondents. As to grounds 2 and 3, the Court's findings are similar, that is to say [sentencing counsel] was not ineffective. Mr. Heald was not prejudiced in prosecuting his request to appeal the sentence. [Sentencing counsel] advised him almost immediately of his right to appeal the sentence, wrote him a letter to that effect, as did the Court advise him of his right, offered to help him file a notice. The only thing he asked from him is, what do you think would be some grounds that might assist us with this? He heard nothing back, instead the petitioner filed the sentence appeal with an inmate advocate who assisted in a manner that would be the same as any other attorney, in other words, the inmate advocate and/or Mr. Heald filled out the form, I don't have it in front of me, in a way that would not differ markedly from the way any attorney would have. It was sent in on time. The petitioner got to request his sentence be reviewed[;] it was denied. As [the State's post-conviction counsel] pointed out, there is no remedy available for this, even if the Court found that [sentencing counsel] was ineffective, there is no prejudice because the appellate division of the Supreme Judicial Court considered the case and turned Mr. Heald down.

So as to those two grounds, 2 and 3, judgment will be entered for the Respondent on those as well. [4]

---

[4] Although neither attorney indicated that they did not desire any further facts or conclusion, the Court noted in closing: "I have – incidentally, I didn't consider this. ...Even in this memo Mr. Heald continues to blame the victims for these events. But that's neither here nor there because it is not part of the decision of the Court." (Id. at 114.)

(Id. at 109-13.)[5]

In his memorandum in support of his request to the Maine Law Court to accept his appeal from the denial of post-conviction relief, Held, through counsel, summarized the issues presented as follows:

1. The Post Conviction Review hearing process violates a defendant's right under Article One, Section Six of the Constitution of the State of Maine to an impartial trial.
2. The Post Conviction Review hearing process violates a defendant's rights under the Constitutions of the State of Maine and the United States to examine witnesses against him.
3. The Post Conviction Review hearing process violates a defendant's rights under the Maine Rules of Evidence to examine witnesses against him.
4. Appellant's trial counsel was so ineffective as to violate his right to assistance.

(Mem. Appeal Post-Conviction Dec. at 1.) With respect to the first of these three grounds Held's claims were predicated on the fact that the same judge who sentenced him presided over his post-conviction hearing and, it is Held's conviction, was not impartial and was, as a consequence of his first-hand knowledge of the sentencing, in essence a witness against Held at the post-conviction hearing – a witness that Held could not cross-examine.

As to the ineffective assistance claim the memorandum expounded:

> The Court, in concluding that counsel had not been ineffective, asked rhetorically[,] "So what was [sentencing counsel] to do?" ...The answer is – well, just about anything.
> Once the cap deal had been agreed to by the State [sentencing counsel's] focus had to be on convincing the sentencing court to give Appellant an unsuspended sentence adding up to less than 15 years. [Sentencing counsel] knew that Appellant would have to serve immediately no more than 15 years, and believed that he was likely to get

---

[5] After this hearing Held filed two pro se motions with the Court: one was a motion for sentence reduction under Maine Rule of Criminal Procedure 35 and the other a motion to amend the post-conviction petition. The Court issued an order denying both motions for legitimate procedural reasons. I note that the proffered amendments to the post-conviction petition were unremarkable and unlikely to have changed the complexion of the post-conviction court's findings and conclusion had they been considered by the Court in the context of the evidentiary hearing.

9

the maximum unless something compelling was done on his behalf. Roughly translated, Appellant needed help; nothing [sentencing counsel] could do would hurt; and something he did might help.  As Appellant's attorney, he was therefore free to get creative, and obligated to at least get busy.

[Sentencing counsel] did not examine the notes of counselors who had worked with Appellant to see if there might have been something in those notes to help him.  He had nothing to lose by calling the witnesses suggested by Appellant but called none of them and made no effort to find other witnesses.  He did not review the Pre-Sentence Investigative Report with Appellant; he did not demand to know why the forensic psychologist had determined that Appellant was semi-illiterate and denied Appellant the opportunity to take written tests.

[Sentencing counsel] was under no obligation to provide the court with all information of which he had been aware; in fact, his duty to his client was to not volunteer damaging information, to offer it only if questioned directly.  Accordingly, he could have and should have presented an analysis of sentencing practices that offered arguments as to why Appellant should be treated with some leniency, not merely parrot a court study showing that sentences were being increased.

Most importantly, he made no effort to enlist experts of his own choosing.  He did not seek funds with which to have Appellant examined by a doctor who would not have been working for the State but who would have been looking in particular for a psychological angle helpful to Appellant.  If it had turned out that no such angle was found by an independent professional the report could have been kept out of court, so that the "aggravating factors" that the court found in the forensics report would not have been before the court.

....

Under the required analysis the demonstration of [sentencing counsel's] performance fell below the professional stand does not end the case – there must also be a showing of prejudice.  As has been demonstrated the PCR Court's holding that there had been no prejudice can not be taken at face value.  The issue is not that Appellant failed to make the requisite showing at the PCR hearing, the issue is that Appellant was denied the opportunity to make a showing at all, because he was denied the opportunity to examine the only witness who could speak to the point.

The record, however, shows that the sentencing judge was influenced by the harmful forensic report that need not have been before the Court at all, including the Court's recitation of Dr. Rine's assertion that the Appellant blamed the victims and was a medium/high risk of reoffending.  The record shows also that [sentencing counsel] made no sentencing recommendation whatsoever, leaving the court with nothing to consider but the State's request for the maximum sentence permitted under the cap.

10

(Id. at 10-12.)

In its order denying a certificate of probable cause to appeal the post-conviction court's decision the Maine Supreme Court stated, as relevant:

> We have reviewed the judgment entered in the Superior Court, and have fully considered the petition and its request for a certificate of probable cause, as well as the accompanying memoranda. The petitioner contends that the Superior Court erred or exceeded its discretion in denying Heald's claims based on ineffective assistance of counsel in the plea negotiations and sentencing, and in addition, that the post-conviction proceeding violates Heald's rights under the Federal and State Constitutions, and the Rules of Evidence. Based on our review, we determine that no further hearing or other action is necessary to a fair disposition of the matter.

(Order Denying Certificate of Probable Cause at 1.) Heald filed a motion to reconsider this order which requested that the Court advise him of the reasons for denying him the certificate, which the Law Court responded to by denying his motion for reconsideration.

## *Discussion*

### *Ineffective assistance of counsel when counsel at sentencing failed to subpoena "material witnesses"*

Heald's burden with respect to this 28 U.S.C. § 2254 ineffective assistance claim is substantial as the First Circuit explained in Smiley v. Maloney:

> A criminal defendant claiming a Sixth Amendment ineffective assistance violation must establish that (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694 (1984). See also Mello [v. DiPaulo , 295 F.3d [137,]142 [(1st Cir. 2002)]. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.
> A [28 U.S.C. § 2254] habeas petitioner must further show, under the Antiterrorism and Effective Death Penalty Act, Pub.L. No. 104-132, 110 Stat. 1214 (1996), that the state court's decision "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

> established Federal law, as determined by the Supreme Court of the United States." Id. § 2254(d)(1). The "contrary to" prong is satisfied when the state court "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," Williams v. Taylor, 529 U.S. 362, 405 (2000), or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a [different] result," id. at 406. The "unreasonable application" prong is satisfied if the state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. Moreover, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.
>
> On previous occasions, we have noted that "[t]he Strickland principles for deciding ineffective assistance of counsel claims are 'clearly established' for purposes of the AEDPA." Ouber v. Guarino, 293 F.3d 19, 26 (1st Cir.2002) (citing Williams, 529 U.S. at 371-74).

422 F.3d 17, 20-21 (1st Cir. 2005). See also McGowan v. State, 2006 ME 16, ¶¶ 9-12, __ A.2d __, __, 2006 WL 359964, *2-3.

The post-conviction court, affirmed by the Law Court, unquestionably undertook the Strickland-esque two-pronged deficient performance and prejudice inquiry apropos sentencing counsel's decision not to present reputation witnesses. The Court prefaced its conclusions on this score with an articulation of the need for Heald to demonstrate both a deficiency of performance and prejudice. (Post-Conviction Hearing Tr. at 109.) Recognizing that counsel might have been wise to call Heald's brother (yet unwise to call another witness proposed by Heald) the post-conviction court concluded that, given the corner counsel was in, his performance at sentencing was driven by a defensible tactical choice and that, even assuming his performance was constitutionally inadequate, there was no prejudice as the totality of the circumstances supported the propriety of the stiffer

12

fifteen-year sentence.[6]  This determination was neither contrary to nor an unreasonable application of Strickland.

With respect to Heald's allusion in his first 28 U.S.C. § 2254 ground that his attorney failed to abide by the contractual rules of plea agreements, such a claim was not included in Heald's brief seeking the Law Court's review of the post-conviction court's denial of his ineffective assistance claims.  See Baldwin, 541 U.S. at 29.  Indeed, Heald's argument to the Law Court emphasized that counsel was maneuvering within the parameters of a fifteen-year cap.

### *Challenge to having the sentencing judge preside over the post-conviction proceeding*

This Court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (emphasis added).  To the extent that Heald challenges the post-conviction under the Maine Constitution or the Maine Rules of Evidence, he cannot wage this battle via a § 2254 petition.

Heald did cite to the United States Constitution in his effort to get the Maine Law Court to review the denial of post conviction relief when he argued that the post-conviction hearing process prevented him from examining witnesses against him in that he viewed the presiding judge to be an adverse witness.  I have reviewed the post-conviction transcript and there simply is no reasonable basis for a conclusion that the presiding judge was functioning as an adverse witness in the post-conviction proceeding.

---

[6] As the sentencing judge the judge was in a uniquely capable position of determining whether or not his sentencing determination would have been impacted in a manner that benefited Heald.  I discuss Heald's complaint about having the same judge preside over the sentencing and post-conviction proceedings below.

13

The argument that this was some sort of Fourteenth Amendment violation is frivolous. I further note, that with respect to the adjudication of 28 U.S.C. § 2255 motion brought by federal prisoners the First Circuit Court of Appeals approves of the sentencing judge bringing his or her first hand experience at the movant's trial and/or sentencing to bear when adjudicating the habeas challenges to those proceedings. See United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993) (observing that, when, a "petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing."). As I noted above, see supra note 6, a sentencing judge is in an advantageous position to make the Strickland prejudice call in the context of a habeas challenge.

***The post-conviction court's "expungement" of Heald's natural rights claim vis-à-vis the gross sexual assault offense***

There is no question that Heald did not include his challenge to the post-conviction court's "expungement" of his natural rights challenge to his gross sexual assault conviction to the Maine Law Court when seeking its review of the post-conviction court's denial of relief. See O'Sullivan, 526 U.S. at 845. Therefore, Heald has not fully exhausted his state remedies and is not entitled to federal review of this claim. Furthermore, the record set forth above indicates that the post-conviction court did consider this ground, discussed its lack of merit with post-conviction counsel in front of Heald, and that there was a (very reasonable) consensus between the judge and post-conviction counsel that it had no merit.

*The "exceedingly high incarceration sentence"*

To the extent that Heald's challenge to his fifteen-year sentence is alleging a violation of state law, this ground is not a cognizable 28 U.S.C. § 2254 ground. See § 2254(a). To the extent that Heald means to assert a cruel and unusual punishment claim under the Eighth Amendment of the United States Constitution there is no doubt that he did not adequately articulate such a challenge to the state courts. See Baldwin, 541 U.S. at 29.[7]

*Conclusion*

For the reasons set forth above, I recommend that the Court **GRANT** the motion to dismiss (Docket No. 5) and **DENY** Heald 28 U.S.C. § 2254 relief.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

April 21, 2006.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

---

[7] Heald did exhaust his state remedies in challenging his sentence as "excessive" given that he did appeal his sentence to the Maine Law Court. However, neither in that effort nor in his efforts to get the Law Court to review the denial of post-conviction relief did he suggest that this challenge had Constitutional dimensions.